Number 172078, Jane Doe v. Harvard Pilgrim Health Care, Inc. Good morning, Your Honors. May it please the Court. My name is Mala Rafiq, and I'm here today with Sarah Burns, representing the appellant, Jane Doe. May I reserve two minutes for rebuttal, Your Honors? Yes. Thank you. The central question before the Court today is whether Jane Doe has met her burden of proving that without continued residential treatment, her condition would have worsened effective February 12, 2013. Well, I hate to disagree right off the bat, but I think, Counsel, that the central question here is what is the standard of a year? Because it makes a critical difference, I suspect, in this case, whether we review Judge Casper's decision, a no vote vote only for clear error. Your Honor, I understand that in both Gross and Stephanie C., this Court has raised the issue of whether the clear error standard of review would govern here. We raised the issue. We pointed out that this Court has never decided that issue. That's absolutely true, absolutely certain, Your Honor. But in this case, I actually believe that clear error did occur, even if the Court decides that's the standard. But are you willing to concede that that's the standard of review? I'm not, Your Honor, because in a de novo review case, I appreciate very much that the District Court is a fact finder in a de novo review case, even in the ERISA context. But unlike traditional cases, there's no fact finding that occurs. There's no testimony. You know, a good example here would be the OPP decision. We don't know who the OPP examiner was, whether it was a man or a woman. We don't know if their credentials are as they clearly are. But this was required to review fact-intensive matters and draw inferences from them. And the alternative to some sort of deferential review is to ask us to reinvent that wheel. Do you have any authority that suggests our view is other than clear error? I don't, Your Honor. I would say that there isn't one circuit in the country that has adopted the clear error standard in a de novo review case of an ERISA decision. And I would hope this would be— What did you say? I don't know of a circuit court in this country that has adopted the clear error— Yes, there are at least two. Oh, I apologize, Your Honor. I was not aware of that. My understanding has been that the de novo review standard has been the standard in this circuit for 20 years, and I appreciate very much that that is under consideration in this Court. However, if this Court chooses to adopt the clear error standard, I would say that the clear error here was the district court's decision to limit the record to March 13, the date of the OPP decision. And that's because under consideration before the Court today are the dates of treatment between February 12, 2013 to June 18, 2013. That's what the district court determined was before the Court. But Harvard-Pilgrim reviewed all medical records for that period of time from February 12, 2013 to June 18, 2013 during the administrative review we conducted while this decision—while this Court was stayed. The district court, however, decided to limit the record to only those records reviewed— or only those records in place through March 12, 2013. To do so was clear error. What this Court has said in listing is what is before a court—what a court is required to review is what was before the administrator at the time they made their decision. Here— Yes, Your Honor. I just want to follow along your argument. So excuse me for interrupting you. So your position is that the clear error was the district court's failure to hold that all of those records for that in-between period were part of the record, and therefore the decision that she reached was also clear error because she didn't consider enough information? She didn't—yes, Your Honor. She didn't consider— So it's like double clear error. Yes, I would say double clear error. I think there's—the problem really is, Your Honor, is that the district court reviewed something that Harvard-Pilgrim didn't review. And as a result, she wasn't really reviewing the administrator's decision. She was reviewing a decision that wasn't actually made. I thought the decision that was being reviewed was the OPP decision. That's what the district court said, Your Honor. But we state this litigation so that because Harvard-Pilgrim said, you have not exhausted— I understand there was a stay. But this appeal was taken, as I understand it, from the OPP decision. It was taken from the OPP decision, Your Honor. We filed litigation— And I understand there was a stay and there was this administrative appeal in an attempt to resolve the matter, which I look at as some type of alternate dispute resolution attempt, right? And I understand you say that the record in that ADR proceeding ought to be incorporated into the record. But I'm struggling with the notion of why that should be when the appeal itself was taken from the OPP decision. Let me get on both questions, then you can answer them. I'm also struggling with the notion, having looked at what came out in what I refer to as the ADR proceeding, I'm also struggling with the notion of how we can say that that material would have made a difference. It seems to be pretty much more of the same that came out before the OPP. Okay, let me take your first question first, Your Honor. I would disagree with your characterization of the administrative review that the parties undertook during the stay as an ADR. The administrative review occurred because Harvard Pilgrim alleged we had not exhausted the period of time, exhausted our administrative remedies for the period of time between February 12, 2013 and June 18, 2013. And it is undisputed that that period of time is before the court. On the same day that we filed the joint motion to stay, during which the parties agreed that this was an administrative review and the records from that review would be part of a record before the court, Harvard Pilgrim filed an answer that denied our claim that we had exhausted our administrative remedies and that had an affirmative defense that we had failed to exhaust. So it wasn't an ADR proceeding, Your Honor. It was actually a proceeding that was designed to exhaust our administrative remedies. And the way we jointly portrayed it to the court was that it was a continuation of the plaintiff's administrative remedies, and that's a fact. But the district court never ruled that you had to do that to us. She didn't rule, Your Honor. But I think we would have failed. Except for the ADR decision, there was no new action filed. There wasn't a new action filed, Your Honor, but the district court ruled that the period in question was February 12 to June 18. If it was strictly limited to the OPP decision, then the period under question would not include the remaining time frame from the first admission. That ADR proceeding, as you're referring to it, which I truly believe was an extension of the administrative appeals process, actually changed the scope of the court's review from just that OPP decision issued March 12 all the way through June 18, 2013. And that's what makes that review relevant. The court explicitly states on page 7 of her opinion that she is considering that entire period of time of issue as she's making her decision. As to your second point, Your Honor, the information that was submitted during the internal appeals court, the administrative review conducted during the stay, and how that would have made a difference, it all comes back to the district court's fundamental misunderstanding of the nature of mental illness and how mental illness was treated at this time. But that's why I asked whether it would have made a difference. Because if the district court's understanding is wrong, then you're obviously entitled to either a reversal or a redo. If the district court's understanding of medical necessity is right, then the new information, as far as I can tell from it, wouldn't have made any difference. We get back to the question of did the district court apply the right standard or did the district court go off on a tangent? The district court, in my opinion, Your Honor, went off on a tangent. The residential treatment guidelines, the continuing care guidelines, which form the basis of this case, speak to treatment. They speak to recovery. They speak to resiliency. They speak to improvement. They require improvement during a residential treatment stay. The district court said because Jane was improving, she no longer needed residential care. And she relied on Harvard Pilgrim's medical reviewers, who had not reviewed the medical records, to justify her interpretation of the guidelines in that sense. But that is not what the guidelines say. And the appeal that we did during the stay at this procedure actually clarified what the guidelines say. Residential treatment and the nature of the treatment Jane was receiving was not acute treatment. And that's what the district court misunderstood. The district court misunderstood the guidelines and she misapplied the facts to the guidelines. But the reason she did so is because she had a limited record from Harvard Pilgrim, which confused the issue absolutely. Harvard Pilgrim's own doctors misapplied the guidelines on several occasions because they were looking at acute symptoms versus stable symptoms. When Jane was admitted to Austin Riggs, her symptoms were stable. She was not suffering from suicidal ideation. You can look at Dr. David Flynn's notes that approved the residential treatment program. She wasn't suffering from acute symptoms. She didn't have acute symptoms during the first couple of weeks. But at the very time Harvard Pilgrim denied her claim, Jane was transferred to the patient assessment safety unit at Austin Riggs because she was a threat to her health. Let's assume that non-exhaustive Harvard Pilgrim was correct. Is the appeal process, you get a decision, you get denial, you then appeal the denial within Harvard Pilgrim, and if Harvard Pilgrim turns that down, do you then have a right to go to OPP? Yes, Your Honor. So this seems to be sort of an either fish or a fowl because it sounds like you start the litigation after OPP, everything's in normal course, they allege failure to exhaust, you then get a stable litigation, and the two of you go to this proceeding where Harvard Pilgrim reviews it again and denies it. If that were a true failure to exhaust, though, wouldn't you next have gone to OPP again? No, Your Honor, because OPP is voluntary. It's not required by the terms of the plan. So that's why we were, and you can see from the February 26, 2016, denial letter that Harvard Pilgrim issued. It's a four-page denial letter. It's thorough. Yes, Justice Thompson. So procedurally, once again, their claim of failure to exhaust is that they're saying you should have filed some kind of request for reconsideration after OPP? No, Your Honor. Your Honor, what actually happened was OPP rendered a decision through February 12, 2013. We get to court and we file litigation based on that decision. Harvard Pilgrim then says Austin Riggs has filed claims for the period of time from February 12, 2013 to June 18, 2013, which is the duration of Jane's stay at Austin Riggs. And they said denial letters were issued on that period of time and it was never appealed. We understand the time frame for appeal has passed, but we are going to waive that time frame and allow you to appeal this decision. It was an eight-month appeal that we went through, Your Honor. It started in June of 2015. Harvard Pilgrim's medical director reviewed the information we submitted, including the entire medical record for Jane's first admission at Austin Riggs through June 18. And then a decision was rendered by its medical director and Harvard Pilgrim, which we then appealed. It was a formal appeals process. It was referred to as an administrative review. It was referred to the district court in our joint motion to stay as a continuation of an administrative review, and it occurred in the context of an affirmative defense. We would have committed malpractice. We would have faced a motion to dismiss had we not gone through that process. But for the district court not to include that information that Harvard Pilgrim reviewed when she considered her decision, it was fundamental error. It was clear it was a mistake, because Harvard Pilgrim had reviewed that information. There was simply no prejudice to Harvard Pilgrim to have that information before the court. Does that answer your question, Your Honor? Yes. So I just want to quickly say that Judge Sonia, you had raised the issue of whether I would like to speak to it. I would just quickly say that we have met our burden, that Jane's treatment throughout the entire program was medically necessary. She suffered from psychosis, suicidal ideation, she was treatment resistant, and ultimately she ended up at Berkshire Medical Center on June 18th having tried to carve kill in her leg. This was someone who had intractable mental illness and needed the treatment provided by Austin Riggs. And by limiting the record to March 13th, the district court avoided having to consider the entirety of Jane's condition and the treatment that she received at Austin Riggs. Thank you, Your Honors. Good morning. May it please the court. I'm Christine Zaleski. This is Stephen Treckinger. We represent the appellees, Harvard Pilgrim Healthcare, in the plan. I'd like to start where you started, Judge Celia, with the question of what is the standard of review here? Last year, this court signaled that it was moving toward a clear error of standard of review when the district court applied a de novo standard of review to the administrator's decision. While we think that's the appropriate standard of review to apply here, we don't actually think it's necessary to reach that question because as in Stephanie C., the standard of review doesn't have declaratory significance. No matter how you look at it. I think in this case it's going to have a fair amount of significance because if we do a de novo, then the whole issue of whether the court should have looked at these additional records may tend to disappear because we can look at the records and we're doing a de novo anyhow. But if it's clear error of standard of review, then don't we become very concerned about whether the district court properly defined the record or not because given that we're going to defer under a clear error of standard of review to its back finding, we would want to make sure that it properly constructed the record before making that back finding. I think that there's been some confusion about what the standard of review is as it applies to different aspects of this case. It's actually a different standard of review that applies to the district court's determination about what the final administrative decision was. Under Recoupro, the district court has tools at its disposal  Here they'll move to change the scope of the record. The district court had a hearing on that issue where the parties presented their various sides and ultimately the district court concluded that it was the March 2013 decision that was the final administrative decision. That's what's pleaded in the complaint and that's what this case is fundamentally about. The complaint was never amended. Let me just help understand that because it's a confusing issue. As I understand it, when the complaint was filed, the response was made that there was a failure to exhaust administrative remedies with respect to the most subsequent time period in which the claim was made? Correct. We think that issue is a little bit of a red herring because it actually concerns claims that aren't at issue on this appeal. It's these additional invoices that were submitted by Austin Riggs following the final administrative decision. The question at issue here, whether it was medically necessary for DOE to continue treatment at Austin Riggs on the date of denial in February, really just concerns the internal appeals and the external appeal. It's not these other invoices that were submitted from which an appeal was never taken. We're being offered two models. I think the plaintiff was saying that this was a continuation of the administrative appeal by consented parties. I think you're saying this was a settlement discretion. Right. I think that's the crux of the disagreement and I would again just say that the district court had a hearing on this issue and already considered these issues. What are the attributes of how you proceeded that you would point to that would cause us to classify this as a settlement discretion rather than a consensual reopening of the administrative appeal? Well, I think first and foremost, a complaint had been filed. And in that complaint, it alleged that the final administrative decision was the OPP decision. But what is it about that you subsequently, after that complaint was filed, alleged failure to exhaust? So what had not been exhausted, in your opinion, when you made that good faith allegation in your answer? You know, I was correct that we pleaded as an affirmative defense in our answer that Doe failed to exhaust. Say what we're referring to. Right. So after the date of the final administrative decision in March of 2013, Austin Riggs, which was the center where Doe was receiving treatment, continued to submit additional invoices. But you just told us we should ignore that. And you pled failure to exhaust in response to the initial complaint. So what was the exhaustion problem that you were flagging? I would say at the time that we filed our answer, it seemed to be the most prudent thing to do. Why? It's still a good faith basis for denying. Correct, Your Honor. And we weren't totally sure what form this case was going to take. If Doe had failed to exhaust her administrative levy... Then why doesn't that support their argument that you thought that there was a failure to exhaust issue and that resolving it by consent, as you did, completed the administrative process? Doe was not prejudiced by our willingness to look at a date. How were you prejudiced by your willingness to look? I would say we also weren't prejudiced, but that doesn't change the nature of what the final administrative decision is. Here's what the problem is, Counselor. You interpose a failure to exhaust defense. None of us can understand what it was that you thought that the plaintiff had not exhausted. The only thing the plaintiff says is, well, they thought that I should undergo this voluntary administrative appeal process which let us get in all the evidence through June, and I had to do that to satisfy these defense lawyers and get them to back off this claim that I had failed to exhaust my administrative remands. And your answer to this is, I interposed that defense in good faith, but you had not given Judge Thompson an answer to her question. What was it you were claiming that the plaintiff failed to exhaust? What specific thing should the plaintiff have done before filing the complaint to exhaust her remands? It concerned these additional invoices that Austin Briggs had submitted after March of 2013. Were they claimed in the complaint? Were the invoices cleared in the complaint? The additional ones. No, they were not cleared in the complaint. And how could the plaintiff have exhausted those invoices if they came after they filed the complaint? When you say to your adversary, when you say to a district judge, Judge, my opponent doesn't belong in this court because she hasn't exhausted remands. And the judge says to you, what remedy? You have not an answer. It looks like the answer here was, well, they should have undergone this voluntary administrative appeal process which they then underwent. But if you meant something else by that defense, or if that defense was simply interposed as a matter of boilerplate without any meaning, you better tell us. I would just say that the nature of the agreement doesn't concern what the final administrative decision is. We need an answer. I have to say, I wasn't involved in creating the answer. No, but that's a cop-out. You're here representing the party. Yes, I appreciate that. You allege in your answer failure to exhaust. You have to have a group-based basis for that. We have asked you, this is the fourth time, what is it that the plaintiff failed to exhaust? And again, I would just point, Your Honor, to the additional invoices submitted by Office of Remand. How does the plaintiff exhaust those? So the plaintiff doesn't need to exhaust those to answer the question. Well, then why didn't the plaintiff fail to exhaust? To answer the question, that's an issue on appeal here. The plaintiff didn't need to exhaust the additional invoice question. Because the period, the reason that the period between March and June is relevant. That is not the issue on appeal. Excuse me? That still doesn't answer the question of what wasn't exhausted initially. Because when you allege failure to exhaust, the fact that you enter into a voluntary agreement suggests that everybody understood that there was an exhaustion issue and that the parties were willing to waive whatever rights or responsibilities they had to make sure that it was exhausted before it got to the district court for review. I mean, that's what it suggests to me. This was an effort of early resolution of the case. We agreed to look at additional records that Doe had repeatedly argued that we didn't look at. That's the other thing. I mean, on the answer, it sounds like probably the real answer is that someone answering the complaint before you know a lot about the case knew there were a bunch of affirmative offenses. They didn't want to waive them, so they stuck them all in there without maybe figuring out how everyone goes. And so that happens. But it does set the context here for what then happens. And when we look at what then happens, it kind of looks like an administrative appeal. It doesn't have the feel of a settlement discussion. In a settlement discussion, the two of you would be going back and forth and talking about splitting the local grid. Here, it looks like your client agreed to go back and do what it does if it's on its own in an administrative appeal and come up with a yes or no answer, and it did that. So when you have that introduction through the answer, and then you have a process that looks like one, it seems odd that you wouldn't then close everything. That agreement arose both in the context of the answer and also in the context of what was pleaded in the complaint, which was that exhaustion occurred in March of 2013. That's what the case was about at that point. Doe had argued both in the complaint and repeatedly that Harper Pilgrim failed to review the medical records and that she was prejudiced by that failure. So we said in an effort of conciliation, we'll take a look at the medical records. If we screw it up, they'll change our mind, and both parties can forego the additional expense of litigation. Ultimately, that's not what happened. Harper Pilgrim took a look at the medical records and determined that there was no need to change its mind. There's no agreement to change the date of the final administrative decision, and the district court's determination on that point is subject to abuse of discretion standard here. I just think that the district court was well within her discretion after holding a hearing on this very issue to determine that the final administrative decision was the OPP's decision, which was pleaded in the complaint and which is what's contemplated by the terms of the plan. So if I could just get back to the standard review on medical necessity. Again, we don't think that it has decoratory significance here, but if this court were so inclined, we would welcome a clear error of standard review. Doe has argued that the review of medical necessity isn't an issue of fact, but I would just point this court to its precedent in Stephanie C, in which it stated that on de novo review, the court may weigh the facts, resolve conflicts in evidence, and draw reasonable inferences. In this case, as in all cases where a district court makes a de novo review of an administrator's decision on medical necessity, the factual issues really predominate. The district court had to assess the credibility of various experts in the record. The district court had to weigh different symptoms and had to draw the line somewhere. Mere presence of isolated incidents of psychosis is not enough to warrant continuing treatment in residential care. The question is whether or not Doe could safely be stepped down to a partial hospitalization program. Four board-certified psychiatrists in the record, including one appointed by the Massachusetts office charged with patient protection, determined that Doe could be safely stepped down, notwithstanding the fact that they acknowledge she continued to have struggles with mental illness, she continued to exhibit symptoms of psychosis. Nevertheless, in their expert opinion, they believe she can be safely stepped down. The district court described Doe's symptoms for over 16 pages. She acknowledged Dr. Kerkorian's opinion that Doe could not be safely stepped down. Nevertheless, she concluded on de novo review that the most appropriate level of care for Doe at the time was a partial hospitalization program. I think that shows that not only do factual issues predominate here, but that the district court's determination was substantively correct. I'd like to add on the scope of the record issue that even if this court were to find that the district court abused its discretion in determining the date of the final administrative decision, that even if you look at the additional records that have been put in the record by Doe, the Dr. Harris opinion and the Dr. Plotkin opinion, what the general thrust of those opinions deals with is really a straw-man argument, which is that Riggs's open setting didn't undermine Doe's level or Doe's treatment. Nobody's made that argument. None of the reviewing psychiatrists made that argument. That's not what the district court's decision was based on. So to the extent that this... But is that just the point, that if it's clear over review, maybe if those items were in the record, maybe the district court would have based its decision on those opinions and gone off on that direction instead of the view that Judge Casper took in medical necessity. So I guess I would say that's a... Those opinions present a defense to an argument that was never alleged. What the board-certified psychiatrists determined was that it wasn't medically necessary for Doe to remain in treatment, not that Austin Riggs itself wasn't a viable treatment option. But you're saying the records aren't just unworthy the way you said they were irrelevant. I'm saying that the general thrust of those records are irrelevant. There is some information that would be relevant, and that's principally Dr. Harris's opinion. So the court could take that into consideration as well if this court found the district court abused its discretion. However, I think that the information contained in Dr. Harris's opinion, to the extent it's relevant to the date of denial, doesn't outweigh the four board-certified psychiatrists in the record. If I were to ask the question, if we're under clear error of view, we would have to then ask if the court should have given... If we decided the court should have looked at this, we would have to vacate remand unless we concluded it would have been clear error upon looking at this to have concluded otherwise than Judge Cassano did. I agree. It's a lot of what-ifs, and that is the logical conclusion. But I would say under any standard of review, denial or clear error, as this court determined itself in EC, it doesn't have declaratory significance. So you could look at those records if you find the court abused its discretion and still find there was no medical necessity here. I think it's the only conclusion to draw from this record. Four board-certified psychiatrists, including the OPP psychiatrist as well as the district court, have already taken a look at this record de novo and all have concluded that it wasn't medically necessary for DOTA to remain in residential treatment. We just don't think a sixth look at those claims will change that result no matter the standard of review. If the court has no more questions, I'll yield my remaining ten seconds or so. Thank you, Your Honors. Unless you have any questions for me, I'd like to pick up right where my opposing counsel left off. What she said was that the full-reviewing psychiatrist, including the OPP examiner, already had taken a look at this record. That is incorrect. The only people to take a look at this record, the actual record from February 12, 2013, to June 18, 2013, which I understood her to be referring to, is Dr. Rubenstein, Harvard Pilgrim's medical director, whose ruling that Jane's treatment was not medically necessary was based solely on the fact that Austin Ritz was an open setting, Dr. Gregory Harris, who is the only independent reviewer in the record to take a look at every single piece of evidence and render a decision, and one doctor that I didn't point you to in our briefing and I was remiss in failing to do so, and that's Dr. Edward Darrell. And he's a Harvard Pilgrim doctor who rendered a decision on February 19, 2014, and his review is found in the record at AA243. And Dr. Darrell took a look at all the records that the district court took a look at and applied the correct standard under the optimum continuing care guidelines for residential treatment. And he concluded that the treatment that Jane received for the second admission that Harvard Pilgrim paid for was medically necessary. But in doing so, he looked at that first admission, and he said that while she did not appear to present, and I quote, an imminent danger to herself or others, regardless of the ideology of her negative behaviors, they were well entrenched and only a partial response to treatment was achieved toward the end of her stay at the rehabilitation facility. It is this reviewer's opinion that the member would not be able to tolerate a lower level of care such as outpatient treatment during the period under review and would most likely decompensate and place herself at risk and others at risk. Your Honor, that speaks to your question as to how the opinion would be different. This is a Harvard Pilgrim doctor taking a look at the same records that the district court looked at and rendering a different decision. Unless, of course, there's any further questions for me. Thank you, Your Honor. Thank you, Your Honors.